Caton, J. At what time were the biddings closed ? This is the first and most important question, and it must be determined by the true construction of the act of the legislature, under which the sale was made. That act says: “The Governor shall receive written sealed bids for said property, from allpersons until the first day of July, A. D., 1849, at which time all the bids received shall be opened and compared by the Governor,” &c= In order to determine whether all the bids must be in before the first day of July, we must not only look at the language of the act, but we must also consider its objects, and the nature of the transaction contemplated. By this mode of sale, as we attempted to show when this case was before us at the last term, in order to insure a just competition among bidders, fairness is indispensable. Certain rights must be secured to those who bid, and eminently important among these, is, that a certain determinate time shall be fixed when the biddings shall be closed. Without this, all men will not necessarily stand on an equal footing, which they certainly should. The same rule which shall be held to control this case, must also govern others of a like nature, and this rule should be such as to exclude as far as possible, any advantage which might be extended to one, and which another may not enjoy as a matter of right. This would not be the case if a discretion is left, as to the time when no further bids shall be received. It is not enough that in this instance, we can see that all who desired to bid, had an opportunity to file their proposals. In some other case it might happen, if a discretion is allowed, that the bidding will be kept open till certain bids are received, and then closed, to the exclusion of others, less favored. The rights of the bidders are fixed by the closing of the biddings, and if that is determined by the lapse of time, certainty, which is essential ' to the security of all rights is attained. Confidence as well as fairness is important to insure free competition, and by this certainty, confidence is promoted. We do not mean to say, that a party may not by the terms of the sale reserve the right to receive bids so long as he pleases, or close the bidding at his discretion. An express provision to that effect, in the terms of a law like this, or in the terms offered for a sale by an individual, would undoubtedly authorize such a course, but in the absence of such express provision, or of a necessary implication to that effect, such authority ought not to be presumed. If, then, the terms of this act, will fairly and reasonably admit of a construction which fixes a determined period, when the bid-dings shall be closed, that construction should be adopted. The provision of the act is that bids shall be received until the first day of July, 1849, at which time the bids shall be opened. We think that the language of this act not only admits of this construction, but that according to the ordinary use of language, it is the most natural construction, even without any aid from the subject matter of the provision. The word “ until,” may, either in a contract or a law, have an exclusive or an inclusive meaning according to the subject to which it is applied, the nature of the transaction which it specifies, and the connection in which it is used. In the case of Sands v. Lyon, 18 Connecticut 27, the Court said: “ The word ‘ after,’ which is used in the devise we are considering, like 1 from,’ ‘succeeding,’ ‘subsequent,’ and similar words, where it is not expressly declared to be exclusive or inclusive, is susceptible of different significations, and is used in different senses, and with an exclusive or inclusive meaning, according to the subject to which it is applied.” Of the same class are the correlatives of those words, as “until,” “at,” “before,” “ within,” and the like. All of these words may be used in the same exclusive or inclusive sense and may be used as words of similar import. They are most generally used as words of limitation and indeed almost universally so, unless there are other controlling expressions in the connection, showing that a different meaning was intended. Before the first of July, and until\h& first of July, convey nearly, if not precisely the same meaning. In statutes prescribing time for redemption the word “ within ” is held to be exclusive, although the positive word of exclusion “and not after,” which are usually inserted in statutes of limitations, are not used. The People v. Luther, 1 Wendell 42. In this case we entertain no doubt that the time within which bids might be received expired with the 30th of June. The legislature have exercised the power of determining how long the right to put in bids should continue and when that time expired, the rights of the bidders were fixed, and they could not he defeated by bids coming in after that time. Those rights were guarantied by the terms of the law and of the advertisement.— Bids were invited until a given time, but after that time none were authorized to bid. Had no bids been filed before the first day of July, the power of the Governor to sell, would have been gone. Ho one having closed with the terms offered by the State, she was not bound by any other offer. But it was urged upon the argument, that the subsequent words, -specifying the time when the bids should be opened, extended the time of bidding up to the opening of the bids, or in other words, that the closing of the biddings, and the opening of the bids were to be simultaneous acts. The provision of the law required that bids should be received till the first day of July, at which time, all bids received should be opened. We entirely concur with counsel that this provision prescribing the time when the bids should be opened was but directory. According to the decision in this case, when it was before us at the last term, the responsible bidder who by putting in the highest bid brought himself' within the terms offered by the State, in the law and the advertisement, closed a contract with the State, which either party had! a right to insist upon. By this he acquired a vested right ©£' which he ought not to he deprived, by the delay of the-vendor in opening the bids at a particular time. The governor was- still, vested with a necessary discretion to determine whowereresponsible bidders,, and of the responsibility of the security offered, bufe still all had a right to have their bids considered, if they wersput in in time, and the highest responsible bidder who- offered! responsible security, had a right to.- claim that his bid should. be= accepted. It must have been foreseen,, that various, accidents, might occur which would prevent the opening of the bids even, for days after the time specified in the law,, as-the sickness or unavoidable absence of the governor; the secretary of' State on- the-treasurer, in whose presence the-bidh were required to be- apernad. If the bids could not be opened after the time designated,, in such a case, the rights of both parties, would be lost. It was, the intention of the legislature to effect a sale of the property at the time, and as the governor had no authority again to offer the property, that intention might be defeated, if the specification of the time for opening the bids, should not be held peremptory. By a directory statute, it is not to be understood that no duty is imposed to do the act at the time specified, in the absence of a satisfactory reason for not then doing it, but simply that the act is valid if done afterwards; while a peremptory law requires the act to be done as specified and at no other time. But we think the argument which proves that the provision, fixing the time for opening the bids, is directory, conclusively establishes that the provision fixing the time, within which the bidding should bo closed, is peremptory. If it were otherwise, the time for bidding might have been extended indefinitely, till the necessity which might have occasioned the delay in opening the bids, ceased. dSTo necessity can require such a construction of this law. With the view which we entertain of this ease it is unnecessary to inquire what effect the fact that the first day of July, 1849, was Sunday, might otherwise have had. All the bids were required to be in before that time. And, as we have seen, they might be opened after, that day ceases to be a matter of the least importance, as the complainants bid was not put in till the second of July, in our opinion it was not a bid and no rights could be acquired under it which -.can be enforced in a court of equity. It is unnecessary to .say that all the bids put in after the 80th of June must share the same fate. The decree of the Circuit Court dismissing the bill must bo affirmed. Decree affirmed, ■