FIRST NATIONAL BANK OF LA GRANGE, Trustees, Plaintiff-Appellee, *v.* MID-STATES ENGINEERING & SALES, INC., Defendant-Appellant.

First District (5th Division)    No. 80-2488

Opinion filed October 9, 1981.—Rehearing denied February 22, 1982.

Francis P. Smith, of Shaheen, Lundberg and Callahan, of Chicago, for appellant.

Frank R. Reynolds, Jr., of Reynolds and Reynolds, of Chicago, for appellee.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Defendant appeals a declaratory judgment in plaintiff's favor, contending the trial court erred in holding that the phrase "to the date of death" in an agreement was intended to include the date on which plaintiff's decedent, John D. MacGuffin, died.

The facts are largely undisputed. Plaintiff is the successor trustee under a self-declaration of trust established by decedent, who was a director, officer, and shareholder of defendant. Upon decedent's death on November 17, 1979, plaintiff became the owner, under the trust, of 32,500 of the 65,000 outstanding shares of defendant's stock. The remaining 32,500 shares were owned by Richard Bland.

Decedent, Bland, and defendant had executed a "Buy-Sell Agreement" (agreement) in 1971 which, in pertinent part, required defendant to purchase decedent's interest after his death at a price to be computed as provided in the agreement and paid over a 4-year period at 6 percent annual interest. The agreement also required that in the event of such purchase, the value of the stock was to be determined by an audit of the defendant's books covering the period from the date of the last audit report to the date of decedent's death. Pursuant thereto, defendant had an audit made covering the period from the last audit through November 16, 1979, the day before decedent's death, which excluded from the audit $174,360, which became an asset of defendant as beneficiary of several life insurance policies on decedent.

Plaintiff filed a complaint for declaratory judgment alleging that the audit should have encompassed November 17, 1979, the date of decedent's death, which would have included the insurance proceeds. Defendant then moved for judgment on the pleadings on the ground that as a matter of law the word "to" in the phrase "to the date of death" excludes November 17, 1979, which therefore was properly omitted from the audit evaluating its assets. Plaintiff then filed a cross-motion for judgment which was granted on the finding of the trial court that the phrase "to the date of death" included November 17, 1979—the date of decedent's death. This appeal is taken from that judgment.

OPINION

The sole issue presented on appeal is whether the phrase "to the date of death," as commonly understood in the law, includes or excludes the date of decedent's death. The agreement in question provides in relevant part:

> "1. In the event of the death of either of the Second Parties [decedent or Bland], the said Second Parties * * * do hereby agree to sell to the First Party [defendant] and the First Party agrees to purchase * * * all of the capital stock standing in the name of any such deceased shareholder * * * at the book value of said capital stock as hereinafter set forth in paragraph 3.
>
> * * *
>
> 3. In the event of the purchase of stock from the estate of any shareholder under the provisions of Paragraph 1 of this agreement, the book value of the stock of said corporation shall be determined by audit of the books of account of said corporation by Alexander X. Kuhn & Co., Certified Public Accountants, covering the period from the date of the last audit report to the date of death."

It is a familiar principle of contract construction that the words used be given their ordinary, natural and commonly accepted meaning unless it clearly appears that the parties intended to ascribe to them a peculiar or unusual meaning. (*Illinois Valley Asphalt, Inc. v. La Salle National Bank* (1977), 54 Ill. App. 3d 317, 369 N.E.2d 525.) Equally well established is the rule that every contract is presumed to incorporate existing law (*Illinois Bankers Life Association v. Collins* (1930), 341 Ill. 548, 173 N.E. 465; *Needy v. Sparks* (1979), 74 Ill. App. 3d 914, 393 N.E.2d 1252), so that "the courts, in construing the existing law as part of the express contract, * * * are merely construing the contract in accordance with the intent of the parties" (*Schiro v. W. E. Gould & Co.* (1960), 18 Ill. 2d 538, 544, 165 N.E.2d 286).

With respect to the use of the word "to" in a contract, it is stated in 34 Ill. L. & Prac. *Time* §7 (1958) that:

> "Where the time for doing an act is extended 'to' a specified date, the doing of the act on the specified date is too late. Originally, where a contract simply provides that it is to extend to a certain date, the word 'to' means until and excludes the date following it as a part of the contract, but where a contract is to take effect from its date, and to continue to a certain other date, the latter is not excluded but is to be considered as the last day of the contract."

Defendant refers us to a number of cases in support of its position that the date of defendant's death should be excluded from the audit. We believe, however, that they are distinguishable from the case before us. In *Stearns v. Sweet* (1875), 78 Ill. 446, a question was raised as to whether an

endorsement on each of a number of promissory notes which read "[i]nterest paid on the within note to July 26 * * *" had the effect of extending the time for payment of the notice through July 26. The court stated:

"[I]t is clear the interest was paid only until or before the 26th inst.—that is, embracing the time which was completed when the 26th day commenced." (78 Ill. 446, 448.)

It was thus held that July 26 was excluded. In *Clark v. Ewing* (1877), 87 Ill. 344, the trial court extended the time for a pleading to the third Monday of July. In rejecting the argument that the time did not expire until the end of that day, the reviewing court held that the words "to the third Monday of July" meant "until the meeting of the court upon that day." (87 Ill. 344, 345.) In *Taylorville Sanitary District v. Nelson* (1929), 334 Ill. 510, 166 N.E. 60, the time for the filing of a pleading was extended "to November 14" and it was held that its filing on that day was not within the time allowed, as the phrase "to November 14" excluded that date. In *Martin v. New York, Chicago & St. Louis R.R. Co.* (1952), 346 Ill. App. 467, 105 N.E.2d 122 (abstract), the time to file a motion for a new trial was extended to November 22, and the court found that the filing of the motion on that date was untimely.

It is clear that the principle uniting the foregoing cases appears to be, as stated above in the quotation from Ill. L. & Prac.: "Where the time for doing an act is extended 'to' a specified date, the doing of the act on the specified date is too late." While in that sense, the use of the word "to" serves as a term of exclusion, we note that in the case before us no extension of time to a specific date within which to do an act was involved.

The case of *Domke v. McCue* (1968), 110 Ill. App. 2d 1, 249 N.E.2d 287, also cited by defendant, is likewise distinguishable. There, the court in construing the phrase "to be distributed equally among my nieces and nephews as enumerated in Paragraphs 1 to 13 * * *" found that the word "to" was not intended to be used inclusively. This construction, however, was reached because the testatrix had used the phrase "to and inclusive" in other provisions of the will, and the court reasoned that it would have been inconsistent with her intention to have found that the word "to" was inclusive where it was used alone. In the instant case, the record discloses no terminology similar to that considered in *Domke v. McCue*.

Because no extension of time to a specific date was involved here, we believe the facts more appropriately come within the rule as stated in the above quotation from Ill. L. & Prac., that "where a contract is to take effect from its date, and to continue to a certain other date, the latter is not excluded but is to be considered as the last day of the contract." It is our view that the agreement requiring an audit covering a period from the

date of the last audit to the date of decedent's death is inclusive of the latter date. It appears that the facts are analogous to another case cited by defendant—*Brandenburg v. Buda Co.* (1921), 299 Ill. 133, 132 N.E. 514. No extension to a specific date was involved in that case where, in pertinent part, the contract provided that it took effect from its date October 19, 1911, to July 1, 1916, and from year to year thereafter unless terminated by a notice given 60 days prior to July 1 of any year thereafter. A notice of termination was given April 23, 1916, to take effect on July 1, 1916, and the question presented was whether the phrase "to July 1, 1916" excluded or included that date. If the former, the notice would have terminated the contract on July 1, 1916; but, if the latter, the contract would not be terminated until the next year—or July 1, 1917. Finding that July 1 was included within the time period contemplated by the contract, the court stated:

> "[W]here a contract is to take effect from its date and continue to a certain other date, the latter date is not excluded but is to be considered as the last day of the contract. [Citation.] So in this case, the contract is to continue from October 19, 1911, to July 1, 1916, and from year to year thereafter until terminated. All years of this contract after July 1, 1912, therefore end at midnight of July 1 and begin July 2." 299 Ill. 133, 137-38, 132 N.E. 514, 516.

■■ Moreover, we note that the issue before the court in *Brandenburg v. Buda* was the effectiveness of the notice of termination and, in this regard, the fixing of the last day of the contract was crucial. Similarly, in the case before us, the time period encompassed by the audit was the issue, and the fixing of the last day thereof was not only crucial but was not determinable until decedent died. Thus, while the beginning date of the audit was certain—in the language "from the date of the last audit report"—the time period encompassed by the audit would not be known until the date of death. It appears clear that the parties intended that the occurrence of such event would settle and bring to a close the auditing period, just as the date July 1, 1916, concluded the contractual period in *Brandenburg*. Under the circumstances presented herein, we are of the opinion that the trial court correctly held that the word "to" was used inclusively and that the period of the audit included the date of decedent's death. Accordingly, the judgment appealed from is affirmed.

Affirmed.

MEJDA and WILSON, JJ., concur.